**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRUCE RANKIN, On behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRANSUNION, LLC<br><br>Defendant. | No. 2:21-cv-00296-TSJ<br><br>FIRST AMENDED<br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

Now comes Plaintiff, Bruce Rankin, and for his First Amended Complaint states and avers as follows:

## INTRODUCTION

1. Plaintiff, Bruce Rankin, brings this class action for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter "FCRA"), by the defendant TransUnion, LLC ("TransUnion"). Plaintiff also brings an individual claim for TransUnion's violation of FCRA § 1681i.

2. The class claim arises from TransUnion's pattern and practice of failing to comply with consumers' requests for security freezes of their consumer reports, in violation of the FCRA.

3. TransUnion violated FCRA § 1681c-1 by failing to place a National Security Freeze after receiving a direct request from consumers.

4. A security freeze is a mechanism to place "a restriction that prohibits a consumer reporting agency from disclosing the contents of a consumer report that is subject to such security freeze to any person requesting the consumer report." *See* 15 U.S.C. § 1681c-1(i)(1)(C).

5. The purpose of a security freeze is "to prevent credit, loans, and services from being approved" without consent of the consumer. *See* 15 U.S.C. § 1681c-1(i)(5).

6. With the widespread and prolific occurrence of identity theft and security breaches, these provisions of the FCRA are designed to provide vulnerable consumers with a meaningful mechanism to prevent dangerous access to their sensitive consumer credit files.

7. Identity theft has long been a top consumer complaint in the United States. In 2019, credit card fraud topped the list of identity theft reports to the Federal Trade Commission, with over 271,000 complaints from people who said their information was misused on an existing account or to open a new credit card account. Federal Trade Commission, Consumer Sentinel Network, Data Book 2019, p. 4, https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2019/consumer_sentinel_network_data_book_2019.pdf (last visited December 6, 2020).

8. TransUnion, however, routinely fails to place security freezes on consumers' files upon request.

9. TransUnion's acts and omissions violated the important provision of the FCRA setting forth safeguards for consumers vulnerable to identity theft, effectively precluding consumers from the very protections intended to prevent fraudulent access to their credit files.

10. Bruce Rankin, on behalf of himself and others similarly situated, brings this class action to secure redress for TransUnion's violations of the FCRA. Plaintiff and the Class seek actual damages, statutory damages, punitive damages and attorney fees and costs.

11. Plaintiff also advances an individual claim for damages based upon TransUnion's violation of the FCRA § 1681i, for failure to conduct a reasonable investigation related to adverse and inaccurate tradelines on his consumer report.

12. TransUnion's failure to conduct a reasonable investigation and accurately report in accordance with its obligation to do so, notwithstanding receipt of multiple written disputes from Mr. Rankin, tarnished Plaintiff's credit standing and undermined his ability to timely obtain a VA home loan and the interest rate he deserved.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court is conferred under 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. § 1681p.

14. Venue in this district is proper because TransUnion conducts business in this district and has a principal place of business in this district.

## PARTIES

15. Plaintiff, Bruce Rankin, is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

16. Defendant, TransUnion, LLC, is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

17. TransUnion is also a for-profit corporation in the business of selling consumers' reports to third parties. TransUnion assembles consumer credit information, *inter alia,* for the purpose of furnishing consumer reports to third parties. TransUnion will be served through its authorized agent for service of process.

## FACTS RELATED TO TRANSUNION'S FAILURE TO PLACE A SECURITY FREEZE

18. On March 15, 2020, Plaintiff received correspondence from his attorney, Neil Woods of Woods and Woods, LLC, which informed Plaintiff of a data breach at the law firm, and advised him to place a security freeze on his consumer credit file.

19. On March 17, 2020, Plaintiff sent a written request to TransUnion, and the other major credit reporting agencies, Equifax and Experian, instructing them to place a security freeze on his consumer credit files. Plaintiff attached a copy of the correspondence from his disability attorney thereto.

20. On March 20, 2020, TransUnion received Plaintiff's request, which was sent via certified mail, return receipt requested.

21. While Experian and Equifax timely complied with Plaintiff's request, in accordance

with the FCRA, TransUnion failed to do so.

22. On June 7, 2020, Plaintiff sent a letter and request for assistance to the office of the Ohio Attorney General.

23. On or about June 18, 2020, Plaintiff reviewed his credit activity with TransUnion and saw that TransUnion had activity, whereas Equifax and Experian did not.

24. Plaintiff discovered TransUnion had still had not placed the requested security freeze on his consumer file.

25. Plaintiff was very distressed to discover TransUnion had not honored his request and drafted a letter to TransUnion addressing this, which he sent via certified mail.

26. Plaintiff grew very concerned over the safeguarding of his personal credit file, and worried that TransUnion's failure to place the requested security freeze exposed his to a heightened risk of identity theft of fraudulent activity.

27. On June 23, 2020, Plaintiff sent the correspondence to TransUnion regarding its failure to comply with his request for a security freeze, which TransUnion signed for on July 2, 2020.

28. More than three months after Plaintiff notified TransUnion that Plaintiff's sensitive consumer information was compromised, and Plaintiff requested TransUnion place a security freeze, in a letter dated July 7, 2020, TransUnion from correspondence to Plaintiff stated TransUnion would place the security freeze on his consumer file.

**FACTS COMMON TO ALL CLASS MEMBERS**

29. Upon information and belief, TransUnion's regular practice is to fail to place a security freeze upon a consumer's file following a consumer's direct request within the timeframe mandated by the FCRA; this timeframe is one business day when the request is made by secured electronic means or through TransUnion's toll-free telephone number, and within three busines days when the request is received by mail.

30. Upon information and belief, TransUnion's practices for processing and responding (or not responding) to consumer requests for security freezes are standardized, and TransUnion does not "reinvent the wheel" with respect to each consumer request.

31. Plaintiff's experience is not an isolated incident, as shown by complaints filed by numerous other consumers with the Consumer Financial Protection Bureau regarding TransUnion's failure to place a security freeze upon request.[1] Such consumer complaints include the following examples:

a.

Date received: 10/15/2020
10/15/2020
Consumer's state: CA

Product
Credit reporting, credit repair services, or other personal consumer reports
Sub-product: Credit reporting

Issue
Problem with fraud alerts or security freezes

Consumer Complaint Narrative
Several months ago I went online to transunion credit bureau to freeze my credit it was not frozen. I called 2 months ago requested they freeze my credit they said they would. I called today transunion union and my credit is still unfrozen.

b.

Date received: 3/16/2020
Consumer's state: OR

---

1. *See* https://www.consumerfinance.gov/data-research/consumer-complaints/search/?company=TRANSUNION%20INTERMEDIATE%20HOLDINGS%2C%20INC.&date_received_max=2021-01-20&date_received_min=2018-01-01&has_narrative=true&issue=Problem%20with%20fraud%20alerts%20or%20security%20freezes&page=1&searchField=all&searchText=security%20freeze&size=25&sort=created_date_desc&tab=List

Product

Credit reporting, credit repair services, or other personal consumer reports

Sub-product: Credit reporting

Issue

Problem with fraud alerts or security freezes

Consumer Complaint Narrative

I requested a credit freeze with TransUnion when my social security number was stolen and was being used for fraudulent tax returns. TransUnion claims they have no knowledge of that request. I made the same request with XXXX and XXXX in 2008. I have registered with TransUnion, but I can never login. I was recently told this was fixed and I did login once, today I can no longer login. I don't know if they just have bad IT or of this is a way of discouraging the public.

c.

Date received: 6/18/2020
Consumer's state: NC

Product

Credit reporting, credit repair services, or other personal consumer reports

Sub-product: Credit reporting

Issue

Problem with fraud alerts or security freezes

Consumer Complaint Narrative

On XX/XX/XXXX approx XXXX XXXX EST I was called by a US retailer that a credit account was opened in my name and they declined it but were verifying. I said no I had not applied, it is fraud. They then initiated their process to work with the credit agencies. By XXXX EST the same day, I had contacted all 3 credit agencies by phone to initiate credit freezes as I am a victim of ID theft. I had troubles with Transunion after doing the touch tones to freeze my credit, I am supposed to go to a live representative. Every way to get in touch with a live person via XXXX drops. I reached out on XXXX to TransUnion At XXXX est to alert them of the XXXX number not taking me to a representative and they responded at XXXX the next morning ( XX/XX/XXXX ). They stated for me to

personally message aka DM so they could resolve. I messaged them back at XXXX via DM about the issue explaining the problem. Later that day an alert for another credit inquiry came on my XXXX XXXX app through another retailer. It indicated someone tried getting a credit card in my name on XX/XX/XXXX ( same day ) and the agency who do did the check was TransUnion. If the freeze was properly in place as of XX/XX/XXXX, this shouldnt have happened. I am under the impression freezes happen nearly immediately. I need a resolution and confirmation that my credit is frozen with TransUnion. My credit is being harmed via these fraudulent inquiries and I feel powerless to get Transunion to resolve.

d.

Date received: 5/16/2020
Consumer's state: NY

Product
Credit reporting, credit repair services, or other personal consumer reports
Sub-product: Credit reporting

Issue
Problem with fraud alerts or security freezes

Consumer Complaint Narrative
Trans union is the company I am writing about. My W2 form went missing in the mail so I froze my credit. The other 2 companies I contacted froze my credit immediately.. But trans union is non responsive to anyone. A company whos sole job is to protect peoples cred

32. Plaintiff, and all members of the Class, are "consumers" as defined by FCRA § 1681a(c).

33. Plaintiff, and all members of the Class, submitted a direct request to TransUnion requesting TransUnion place a security freeze.

34. Plaintiff, and all members of the Class, submitted sufficient proof of identification to TransUnion, of their own accord or through their representative.

35. As to Plaintiff and all members of the Class, TransUnion failed to timely place a

security freeze, as defined by FCRA § 1681(c)-1, upon request.

36. TransUnion's failure to timely place a security freeze with respect to each member of the Class was the result of its standardized and intentionally-adopted policies and procedures for processing consumer requests for security freezes.

**FACTS RELATED TO TRANSUNION'S FAILURE TO INVESTIGATE**

37. TransUnion reported derogatory and inaccurate information related to Plaintiff and his credit history to third parties.

38. The inaccurate information included, *inter alia,* accounts with and tradeline information furnished by CACH LLC and SYNCB/JCPenney.

39. The inaccurate information reflects negatively upon Plaintiff, his credit repayment history, his credit worthiness, and his financial responsibility as a borrower.

40. TransUnion has reported the false and derogatory information through the issuance of inaccurate consumer credit reports that TransUnion has disseminated to various credit grantors and other persons or entities.

41. As a direct and proximate result of TransUnion's actions and omissions, Plaintiff was unable to obtain credit, including a VA home loan, and favorable interest rates, received adverse action, and was chilled to applying for credit as a proximate result of the false and derogatory information being reported about him.

42. Plaintiff has been subjected to debt collection attempts as a result of one or more of the credit accounts falsely attributed to him being assigned to a debt collector and/or sold to a debt buyer.

43. With respect to the written disputes Plaintiff lodged with TransUnion, as part of his letters of dispute therewith, Plaintiff informed TransUnion that he disputed the validity of the accounts and/or tradelines on his credit disclosures and/or credit reports.

44. With respect to all disputes referenced in this Complaint, Plaintiff was compliant, prompt and responsive to all correspondence, requests for information and documentation from TransUnion.

45. At all times relevant, Plaintiff has taken steps to mitigate his damages by disputing the inaccurate information with TransUnion.

46. Since on or before December 2018 through February 1, 2020, the CACH LLC and SYNCB/JCPenney account entries and/or tradelines (collectively "Adverse Tradelines") have appeared on Plaintiff's TransUnion consumer credit report under "Adverse Accounts," which is a derogatory status.

47. On or before December 2018, Plaintiff submitted a written dispute to TransUnion, and explained that the Adverse Tradelines appearing on his TransUnion consumer credit report were inaccurate, and requested deletion.

48. On or about December 31, 2018, TransUnion sent Plaintiff written correspondence stating the information had been verified and would continue reporting on his consumer credit report until February 2020 as to CACH LLC and SYNCB/JCPenney until April 2020.

49. Plaintiff disputed these Adverse Tradelines again on January 31, 2019, again explaining to TransUnion that the entries were inaccurate and should be deleted. Plaintiff enclosed a copy of his most recent consumer credit report, with the inaccurate entries marked for easy identification. Plaintiff also enclosed a copy of the dispute correspondence he mailed directly to CACH LLC and SYNCB/JCPenney.

50. And on or about March 15, 2019, Plaintiff received correspondence from TransUnion including a report showing the Adverse Tradelines still appeared on his TransUnion report.

51. On May 8, 2019, Plaintiff disputed these Adverse Tradelines, requesting that the false and derogatory information be removed. Again, Plaintiff enclosed a copy of his most recent consumer

credit report, with the inaccurate entries marked for easy identification. Plaintiff also enclosed a copy of the dispute correspondence he mailed directly to the furnishers of the Adverse Tradelines, CACH LLC and SYNCB/JCPenney.

52. Again, TransUnion continued reporting the false information.

53. On February 1, 2020, Plaintiff sent another written dispute to TransUnion, including the same disputes and enclosing the same information, along with copies of consumer reports from other consumer reporting agencies (Experian and Equifax) to demonstrate the difference in TransUnion's treatment of these Adverse Tradelines, including the date the information is due to be removed.

54. All of Plaintiffs written disputes and correspondence to TransUnion were sent via certified mail, with return receipts, so proof of delivery to TransUnion was confirmed.

55. At the time of the filing of this Complaint, upon information and belief, the false and derogatory Adverse Tradelines have been removed from Plaintiff's TransUnion credit file and no longer appear on his consumer credit report.

56. In the interim, TransUnion's failure to conduct a reasonable investigate and willful noncompliance with the FCRA resulted in adverse events for Plaintiff as discussed herein.

**TRANSUNION ACTED WILLFULLY**

57. TransUnion knew or should have known that its actions and omissions violated the FCRA. These obligations are well-established in the plain language of the FCRA.

58. TransUnion procured, or had available to it, substantial written materials that informed it of its duties under the FCRA.

59. Despite knowing of its legal obligations, TransUnion consciously in breaching its known duties and depriving Plaintiff and other members of the Class of their rights under the FCRA.

60. Trans Union's failure to place security freezes within the mandated timeframe, and

failure to conduct a reasonable reinvestigation into Plaintiff's disputes, were each the result of TransUnion's intentionally-adopted policies and procedures.

61. As a result of the class and individual FCRA violations, TransUnion is liable to Plaintiff and to each Class Member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for each of the violations alleged herein, and for attorneys' fees and costs pursuant to §1681n and §1681o.

**CLASS ACTION ALLEGATIONS**

62. Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class (the "Class") initially defined as follows:

> All consumers residing in the United States who requested TransUnion place a security freeze within five years preceding the filing of this action and during the pendency of this action, for whom TransUnion failed to place a security freeze on the consumer's file within one business day or any electronic or telephonic request, or within three business days of any mail request. Excluded from the class definition are any employees, officers or directors of TransUnion, any attorney appearing in this case, and any judge assigned to hear this action.

63. Numerosity. FED. R. CIV. P. 23(a)(1). The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by TransUnion, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Numerosity can be inferred by TransUnion's size, the fact that TransUnion employees thousands of employees and the fact that its omissions are part of its routine business practice. Furthermore, the Consumer Financial Protection Bureau database of consumer complaints indicates that the class numbers in the hundreds or thousands. *See* fn. 1, *supra.*

64. Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things and without limitation:

a. whether TransUnion timely placed a security freeze on consumer credit files upon a direct request, as mandated by §1681c-1.

b. whether TransUnion's implementation and maintenance of the challenged FCRA procedures was willful (committed knowingly or with reckless disregard); and

c. what is the appropriate amount of statutory damages per class member and punitive damages that should be awarded.

65. Typicality. FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member. Plaintiff seeks only statutory and punitive damages. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

66. Adequacy. Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Fed.R. Civ.P. 23(a)(4). Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Class.

67. Superiority. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed.R. Civ.P. 23(b)(3). The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by TransUnion's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and

expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

68. Injunctive Relief Appropriate for the Class. Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Fed. R. Civ. P. 23(b)(2).

**CLASS COUNT ONE: VIOLATION OF THE FCRA § 1681c-1**

69. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

70. This claim arises under FCRA § 1681c-1, providing consumers with a right to a Security Freeze on their consumer credit file, and is advanced on behalf of Plaintiff, Bruce Rankin, and the Class members.

71. TransUnion received a request from Plaintiff and the Class members, directing TransUnion to place a security freeze.

72. Said requests were made directly to TransUnion along with sufficient proof of identification.

73. Upon receiving said requests and proof of identification, TransUnion failed to place a security freeze within the timeframe mandated under the FCRA.

74. As a result of TransUnion's violations, Plaintiff and the Class suffered injuries, including waste their time, expense and inconvenience to monitor their consumer reports and financial accounts, and to seek redress. TransUnion's failure to comply with the FCRA placed Plaintiff and the Class at a continued risk of identity theft and fraud, posing a substantial risk of imminent harm beyond just possible future injury.

**WHEREFORE**, Plaintiff and the Class Members pray for relief as follows:

1. An order certifying the proposed FCRA class herein under Federal Rule 23 and appointing Plaintiffs and their undersigned counsel of record to represent same;
2. The creation of a common fund available to provide notice of and remedy TransUnion's FCRA violations;
3. Statutory and punitive damages;
4. Equitable and/or declaratory relief;
5. Attorneys' fees, expenses and costs;
6. Pre-judgment and post-judgment interest as provided by law; and
7. Such other relief the Court does deem just, equitable and proper.

**COUNT TWO: VIOLATION OF THE FCRA § 1681i**

75. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

76. This claim arises under FCRA § 1681i.

77. TransUnion issued, assembled, transferred, and published "consumer reports," regarding Plaintiff, as defined in the Fair Credit Reporting Act.

78. TransUnion continually added, stored, maintained, and disseminated personal and credit data about Plaintiff, which was false, erroneous, and misleading, without employing procedures to ensure the maximum possible accuracy of the information posed to Plaintiff's consumer reports and disseminated the same to third parties.

79. TransUnion, through its actions and inactions as described herein, caused great and irreparable injury to Plaintiff.

80. TransUnion failed to invoke necessary functions, procedures, or programs designed to ensure that false data and/or data attributable to other persons would not post on Plaintiff's

consumer credit report, and would be suppressed from appearing on Plaintiff's consumer credit report.

81. TransUnion created, maintained, and utilized a credit reporting system that is defective, and does not comply with the Fair Credit Reporting Act, or other laws governing the TransUnion's actions.

82. TransUnion improperly posted accounts and other data to Plaintiff's credit files.

83. TransUnion acted with actual malice and/or with willful intent to injure Plaintiff.

84. TransUnion defamed Plaintiff by publishing false information regarding Plaintiff's creditworthiness to third parties.

85. TransUnion invaded Plaintiff's reasonable expectation of privacy.

86. TransUnion failed its respective duty to prevent foreseeable injury to Plaintiff.

**87.** TransUnion, through its actions and inactions, as described herein, caused great and irreparable harm to Plaintiff.

**WHEREFORE,** Plaintiff prays for relief as follows:

1. Compensatory damages in an amount to compensate Plaintiff for his personal damages;
2. The greater of Colley's actual or statutory damages;
3. Punitive damages, in an amount greater than $75,000.00;
4. Equitable and/or declaratory relief;
5. Attorneys' fees, expenses and costs;
6. Pre-judgment and post-judgment interest as provided by law; and
7. Such other relief the Court does deem just, equitable and proper.

**JURY DEMAND**

Plaintiff, on behalf of himself and the Class, demands trial by jury.

Respectfully submitted,

*/s/ James A. Francis*

James A. Francis
Lauren KW Brennan
Francis Mailman Soumilas, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Amy L. Wells (*pro hac vice*)
Wells Law Office, Inc.
201 N. Garland Ct., 2908
Chicago, IL 60601
Telephone: (773) 762-9104
Email: attorneyamywells@gmail.com

Counsel for Plaintiff, Bruce Rankin